1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

GARY J.D.,

Plaintiff,

9

v.

10

COMMISSIONER OF SOCIAL SECURITY,

11

Defendant.

12

CASE NO. C22-1821-BAT

**ORDER REVERSING THE
COMMISSIONER'S FINAL DECISION**

13    Plaintiff seeks review of the denial of his application for Disability Insurance Benefits.

14 He contends the ALJ misevaluated the medical opinion evidence, his testimony, and the

15 testimony of his mother.  Dkt. 15 at 1.  For the reasons, the Court **REVERSES** the

16 Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

17 under sentence four of 42 U.S.C. § 405(g).

18                                   **BACKGROUND**

19    Plaintiff is currently forty-nine years-old, has a high school education, and previously

20 worked as a motor vehicle dispatcher and as a shipping and receiving supervisor.  Tr. 32.  On

21 December 12, 2018, he applied for benefits, alleging disability beginning August 16, 2016.  Tr.

22 372-73.  His application was denied initially and on reconsideration.  Tr. 190-200, 203-20.  The

23 ALJ conducted a hearing on March 16, 2021, and a supplemental hearing on July 1, 2020, at

1   which a medical expert testified. The ALJ subsequently found Plaintiff not disabled on

2   December 21, 2021.  Tr. 17-34, 119-61, 162-80.  As the Appeals Council denied Plaintiff's

3   request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-7.

4                                    **DISCUSSION**

5   **A.      Plaintiff's Testimony**

6          Plaintiff contends the ALJ misevaluated his testimony regarding his physical impairments

7   and pain.  At the March 2021 hearing, Plaintiff testified he was injured at work in August 2014,

8   and while he intermittently went back to work on modified, light duty for nearly two years after

9   the accident, he could not work at all beginning in August 2016.  Tr. 127.  At the time he

10  testified, Plaintiff had already undergone multiple spinal surgeries, including two fusions, and he

11  asserted his physicians had exhausted all of the treatment possible for his back.  Tr. 136-37; *see*

12  *also* Tr. 596, 1958.  In addition to his back impairments, Plaintiff also suffered from hip and

13  groin pain as a result of a labral tear, damage to the bone, and arthritis.  Tr. 137-38.  After the

14  hearing, in July 2021, Plaintiff had surgery to replace his hip.  Tr. 3214.

15         Plaintiff testified he cannot work full-time due to the radiating pain in his low back and

16  left leg, occasional falls, and the need for medication that makes it "hard to focus and concentrate

17  on just daily activities, normal tasks."  Tr. 136.  He stated his medication affected his mood and

18  caused forgetfulness and lethargy.  Tr. 137.

19         Plaintiff testified he can only drive up to ten miles due to pain, and he drives

20  approximately every other day.  Tr. 132.  Plaintiff can take care of his bills, check email, and

21  play games on his phone.  Tr. 133.  His hobbies included drumming and riding motorcycles, but

22  both "were very limited now."  Tr. 133.  Plaintiff can shower with modifications.  Tr. 153.

23

1    Plaintiff also testified that prior to his September 30, 2020, date last insured ("DLI"), he

2    could walk approximately five minutes before needing to rest, and he could sit and/or stand for

3    approximately thirty minutes.  Tr. 146-47.  Plaintiff's pain requires him to lie down for

4    approximately one hour per day.  Tr. 151.  He stated he does not typically use a cane, but will

5    use one "at times," and if he goes to the grocery store, he always uses a cart "just for stability."

6    Tr. 145, 151.  Plaintiff asserted a bag of groceries would have been the heaviest item he could lift

7    prior to his DLI.  He additionally testified his roommate does the cleaning, takes out the garbage,

8    and cares for the lawn.  Tr. 149.

9    Regarding Plaintiff's physical impairments, the ALJ found at step two Plaintiff's

10   degenerative disc disease of the lumbar spine and cervical spine, status post-two fusions with

11   radiculopathy, chronic obstructive pulmonary disease/asthma, hernias, and bilateral hip

12   degenerative joint disease are severe impairments.[1]  Tr. 19.  The ALJ subsequently found

13   Plaintiff presented objective medical evidence establishing generally that his medically

14   determinable impairments could cause the symptoms alleged, and no affirmative evidence of

15   malingering.  Tr. 24.  The ALJ was thus required to provide "specific, clear and convincing

16   reasons" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting

17   effects of his symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting

18   *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489,

19   499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply).

20   In discounting Plaintiff's testimony, the ALJ reasoned Plaintiff's function improved

21   "through surgical intervention and rehabilitation," treatment which the ALJ subsequently labeled

22

23
---
[1] The ALJ also found several severe mental impairments, but Plaintiff has not challenged any of
the ALJ's findings regarding his mental impairments.

1    as both "effective" and "conservative." Tr. 24, 26.  In support, the ALJ summarized the medical

2    evidence regarding Plaintiff's treatment for his back impairments during the relevant period, and

3    found the examination notes demonstrated Plaintiff "had functional use of his upper and lower

4    extremities." [2]  Tr. 24-27 (citing Tr. 1343-44, 1202-04, 1725-50, 3073, 1585, 1622-29, 1196-97,

5    1733, 648-49, 1047-49, 1133, 1095, 739, 744, 916, 934, 805, 808, 2262, 1089, 1754, 1756, 2040,

6    2048, 2116, 2601-02, 2137-38, 2168-72, 3052-53).   Plaintiff argues the ALJ erred regarding all

7    of the proffered reasons.  Dkt. 15 at 4.

8

9

10

---

11    [2] Many, if not a majority, of the ALJ's most critical citations to the record are incorrect.  *See* Tr.
     24-27.  Those include the record citations provided by the ALJ in her summary of the evidence,
12    which she contends demonstrate Plaintiff's improvement and inconsistencies supporting the
     ALJ's discounting of Plaintiff's testimony and multiple medical opinions.  However, many of the
13    record citations do not support the propositions for which the ALJ has cited them, because the
     ALJ has miscited the exhibit number.  Tr. 24-27.  For example, the ALJ included multiple
14    citations to exhibit "13F," which consists of a five-page psychiatric opinion, when the ALJ
     appears to have intended, with the nearly ten citations to "13F," to cite to exhibit 12F, Tr. 1040-
15    1223, which itself includes nearly two hundred pages of progress notes regarding the treatment
     for Plaintiff's back impairments.  *See* Tr. 25-26.  There are additional record citation errors that
16    make it difficult for the Court to ascertain the medical records to which the ALJ intended to cite.
     *See* Tr. 26 (citing to exhibit 27F at page 5, when exhibit 27F, Tr. 2135-36, consists of two
17    pages); Tr 25 (erroneously citing to exhibit 16 at page 149, Tr. 1585, for Plaintiff's November
     2016 discharge from physical therapy, when it appears that ALJ intended to cite to exhibit *15F* at
18    page 149, Tr. 1436); Tr. 25 (erroneously citing to Exhibit 17F, when it appears the ALJ intended
     to cite exhibit 16F).  While the Commissioner appears to have realized the ALJ's errors and, in
19    many places in her opposition brief, has likely made accurate assumptions regarding the ALJ's
     intended citations, the Commissioner did not acknowledge or flag for the Court the ALJ's
20    citation errors – thus, adding to the confusion.  *See, e.g.,* Dkt. 21 at 4 (assuming without
     explanation that ALJ intended citation to exhibit "16F149" (Tr. 1586) at Tr. 25 to be to
21    "15F149," or Tr. 1436); Dkt. 21 at 5 (assuming without explanation that ALJ intended citations
     to "13F56" and "13F94" at Tr. 26 to instead be to exhibit *12F* (Tr. 1095, 1033)); Dkt. 21 at 5
22    (assuming without explanation that ALJ intended citations to "17F19-26" at Tr. 25 to instead be
     to exhibit *16F* (Tr. 1457)). Utilizing the parties' briefs and the index to the administrative record,
23    the Court has attempted to ascertain the records to which the ALJ intended to cite.  However,
     that was not always possible, and the Court declines to play detective or mind reader regarding
     the ALJ's additional ambiguous miscitations.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 4

1

### 1.      Findings Regarding Improvement and Effective Treatment

2         Plaintiff argues the medical evidence, including the records cited by the ALJ, failed to

3    show improvement with his back impairments.  Dkt. 15 at 5 (citing Tr. 1096, 595, 600, 603-04,

4    621-22, 1751, 2003, 2010, 2027).  In support, Plaintiff cites to:  (1) September 2018 emergency

5    room records, at which time he tested positive during straight leg raises and had an MRI done,

6    that revealed "severe spinal canal stenosis" of his thoracic spine and moderate spinal canal and

7    neuroforaminal stenosis of his lumbar spine, Tr. 604-05, 595-606; (2) an August 2019

8    electromyography ("EMG"), Tr. 1751; (3) June 2020 treatment notes from Physician's Assistant

9    ("PA") Patrick Czaplicki and MRIs that confirm lumbar disc herniation with radiculopathy, Tr.

10   2010; and (4) Dr. Hatzakis' June 2020 treatment notes observing "a very abnormal low back

11   examination," and hip arthropathy and impingement.  Tr. 2027.

12        Plaintiff further contends any improvement he experienced does not mean he can sustain

13   work, and he asserts the ALJ failed to specify when his improvement to the point of full-time

14   work occurred.  Dkt. 15 at 4.   Plaintiff argues in order to find he had improved to the point

15   where he could return to work, the ALJ needed to find he improved within twelve months of his

16   August 2016 onset date.  Dkt. 15 at 4.  Plaintiff additionally argues the Commissioner

17   mischaracterizes the records to which the ALJ cited as "unremarkable" and "largely normal"

18   when in fact they demonstrated objective abnormalities and/or were irrelevant.  Dkt. 22 at 7

19   (citing Tr. 1133, 1733-34, 171, 173); *see* Tr. 171, 173 (medical expert Dr. Schmitter testifies that

20   Plaintiff's strength deficiencies as documented in physicians' medical records were

21   "significant").

22        Finally, Plaintiff argues the ALJ failed to consider his hip impairment in conjunction with

23   the finding of improvement.  Dkt. 15 at 6.

1          The Commissioner counters Plaintiff's discharge from physical therapy in November

2    2016, his successful completion of a pain management program in fall 2016, and the results of

3    Plaintiff's 2017 lumbar decompression surgery, support the ALJ's improvement findings.  Dkt.

4    21 at 4-5 (citing Tr. 25-26, Tr. 1436, 1457, 648, 1095, 1133).  The Commissioner, however, fails

5    to address Plaintiff's argument regarding the timing and duration of any improvement.  In terms

6    of Plaintiff's examination records, the Commissioner cites to examination notes from May and

7    December 2017, August 2018, November and December 2018, and November 2020, along with

8    emergency room records from December 2018, in arguing that the ALJ reasonably found

9    Plaintiff's testimony inconsistent with examination notes.  Dkt. 21 at 3-4 (citing Tr. 1733, 1133,

10   1095, 739, 934, 2602).

11         The Commissioner further asserts the ALJ considered Plaintiff's hip impairment.  Dkt. 21

12   at 5 (citing Tr. 24).

13         Having reviewed the longitudinal record, the Court finds the records cited by the ALJ and

14   by Plaintiff demonstrate, at best, Plaintiff experienced occasional improvement as to back

15   impairments and pain, but the improvement never lasted more than a few months at most –

16   including during the times following Plaintiff's discharge from physical therapy in 2016, the

17   completion of the pain management program in 2016, and his 2017 laminectomy, as advanced by

18   the Commissioner.  *See, e.g.,* Tr. 1436, 1456-62, 2262, 1089, 1130, 604-05, 595-606, 1860,

19   1748, 1750, 1096.  Indeed, following Plaintiff's completion of a Structured Intensive

20   Multidisciplinary Program ("SIMP") in 2019, at which point SIMP physicians opined that

21   Plaintiff's functional capacity had improved, Plaintiff nevertheless continued to experience back,

22   leg, hip, and groin pain, and was subsequently diagnosed in both 2020 and 2021 with chronic left

23

1   SI radiculopathy, left leg weakness, and sensory loss.  *See* Tr. 3137, 2027, 2139-67, 2010, 2151-

2   43, 2161, 2137-38, 1751, 3134-36.

3          Similarly, contrary to the ALJ's findings otherwise, Plaintiff's examination findings –

4   including those in the records specifically cited by the ALJ – demonstrate fluctuations in the

5   functionality of his extremities.  *See* Tr. 1436, 1733, 1095, 2262, 1089, 1456-58.  Additionally,

6   the ALJ chose to cite to records regarding medical visits unrelated to Plaintiff's back and/or hip

7   impairments, including visits for swollen tonsils, asthma, ingrown toenails, insect bites, and

8   other pulmonary issues, Tr. 739, 744, 916, 934, 805, 806, 2040, 2048, 2116, while ignoring

9   many other more pertinent records contrary to the ALJ's findings, thus engaging in cherry-

10   picking when it came to the examination findings.  *See, e.g.,* Tr. 604-05, 1614-16, 1751, 2027,

11   1732-40, 1748, 1750, 646, 1096, 1861, 3135, 1096, 3135-36, 2026-27, 2139-67, 2137-38, 1130.

12          Finally, the Court finds the ALJ failed to adequately consider the symptoms and pain

13   associated with Plaintiff's hip impairment or provide clear and convincing reasons for

14   discounting Plaintiff's related testimony.  The ALJ did not articulate her evaluation of the hip

15   pain other than to note Plaintiff testified he suffered from it, and he did not specifically seek

16   treatment for his hip impairment until 2020.  Tr. 24.  However, as noted by treating Dr. Hatzakis,

17   Plaintiff regularly complained to numerous medical providers about groin pain from 2014-2020.

18   Tr. 2161.  According to Dr. Hatzakis, Plaintiff's hip issues, which included labral capsular

19   degeneration and osteoarthritis, got "lost along the way" while Plaintiff was treated for his back

20   impairments.  Tr. 2161 (Dr. Hatzakis notes that conclusion after "pouring" through Plaintiff's

21   medical records).  Moreover, the medical expert, Dr. Schmitter, testified Plaintiff's hip

22   impairment, which necessitated hip replacement surgery, existed prior to Plaintiff's September

23   2020 DLI, and such impairments are "gradual."  Tr. 180.  Thus, Plaintiff's "delay" in seeking

1   hip-specific treatment until 2020, did not undermine his testimony, especially given he had been

2   complaining of the related pain for six years.

### 2.   Findings Regarding Conservative Nature of Treatment

4        Plaintiff also argues his treatment during the relevant period from August 16, 2016,

5   through September 30, 2020, cannot be considered "conservative." Dkt. 15 at 6.  He notes

6   before his onset date, he had six surgeries on his lumbar spine, and his then-physician, Dr. Howe,

7   subsequently advised him no further surgeries would be helpful.  Dkt. 15 at 6 (citing Tr. 1860,

8   1287).  Plaintiff further notes following his onset date, in July 2017, another physician, Dr. Teng,

9   performed a revision lumbar laminectomy, decompression, and medial facetectomies, after

10  which his symptoms continued, and Dr. Teng advised him in 2018 that he had no further

11  treatment to offer Plaintiff.  Dkt. 15 at 7 (citing Tr. 1734, 646, 1748, 1096, 1750).  Additionally,

12  Plaintiff underwent a hip replacement just weeks after his July 2021 hearing to repair his pre-

13  DLI hip impairment.  Tr. 3214.  Plaintiff contends none of the above procedures or the additional

14  epidural steroid injections he received can be considered "conservative."  The Commissioner has

15  not addressed Plaintiff's argument regarding the ALJ's erroneous characterization of his

16  treatment as "conservative."  *See* Dkt. 21 at 2-7.

17       The Court agrees the ALJ erred in characterizing Plaintiff's extensive, and often

18  intrusive, treatment as "conservative."  This is particularly true because Plaintiff was repeatedly

19  advised during the relevant period he was nearing or had already achieved "maximum medical

20  improvement" and that "further medical treatment [was] not indicated."  Tr. 1090, 3138; *see also*

21  Tr. 1750 (treating orthopedic surgeon, Dr. Teng, advises Plaintiff in 2017 that he "has nothing

22  left to offer," and that further spine surgery could even worsen Plaintiff's symptoms).

### 3.   Activities of Daily Living

Finally, both Plaintiff and the Commissioner assume the ALJ found Plaintiff's activities of daily living undermined his testimony regarding his physical impairments, but that was not the case.  *See* Dkt. 15 at 7-8; Dkt. 21 at 5; *see also* Tr. 28.  Instead, in conjunction with the ALJ's evaluation of Plaintiff's testimony regarding his *mental* impairments, the ALJ noted that, in spite of his physical impairments, Plaintiff remained socially active and still enjoyed his motorcycle riding, driving by himself, and going on walks. [3]  Tr. 28.  Because the ALJ did not rely upon Plaintiff's ADLs as a reason to discount his physical impairment and symptom testimony, neither can the Court.

For these reasons, the ALJ failed to offer clear and convincing reasons supported by substantial evidence to reject Plaintiff's pain and symptom testimony regarding his physical impairments.

**B.    Medical Opinion Evidence**

At the time of her decision, the ALJ had twelve medical opinions regarding Plaintiff's physical impairments, including many from Plaintiff's treating and examining physicians, one from a testifying medical expert ("ME"), and two from non-examining consulting state agency physicians.  The ALJ considered eleven of those opinions and found most of the opinions "partially persuasive," but found the opinions from two of Plaintiff's treating physicians, Drs. Kroll and Hatzakis, were unpersuasive and the opinions from state agency physicians, Drs. Fitterer and Platter, on initial review and reconsideration, were persuasive. [4]  Tr. 28-33.  The ALJ

---

[3] In support, the ALJ noted that "despite allegations of significant back and hip pain that precluded sitting, [Plaintiff] still enjoyed motorcycle riding, driving by himself, or going for walks for recreation."  Tr. 28 (citing Tr. 2016, Dr. Oscar Benitez's June 2020 psychological evaluation).

[4] The ALJ failed to consider a May 2019 medical opinion regarding Plaintiff's functional capacity from the SIMP team, an issue that is addressed below.

adopted an RFC for the relevant period that mirrored state agency physician Dr. Platter's

opinion, providing as follows:

> [Plaintiff] was able to stand and/or walk four out of eight hours.  He could never
> climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs.  He
> could occasionally balance, stoop, kneel, crouch, or crawl.  He could frequently
> reach in front and laterally with the right upper extremity and occasionally reach
> overhead with the right upper extremity.  He would need to avoid concentrated
> exposure to extremes of cold, vibration and hazards. . . .  He could have no more
> than even moderate exposure to fumes, odors, dusts, and gases.

Tr. 23; *cf.* Tr. 214-16 (Dr. Platter's RFC opinion). [5]

The applicable regulations require the ALJ to articulate the persuasiveness of each

medical opinion, specifically with respect to whether the opinions are supported and consistent

with the record.  *See* 20 C.F.R. § 404.1520c(a)-(c).  An ALJ's consistency and supportability

findings must be supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 792

(9th Cir. 2022).

Plaintiff challenges the ALJ's evaluation of five medical opinions regarding his physical

impairments, including two opinions from the SIMP team, two opinions from treating physician,

Dr. Hatzakis, and an opinion from ME, Dr. Schmitter.

### 1.    SIMP Team Opinions

Plaintiff participated in the six-week SIMP program from May 8, 2019, through July 8,

2019, with the goal of improving his functioning with physical, psychological, and occupational

---

[5] The ALJ erroneously found that Dr. Fitterer's opinion on initial review was identical to Dr. Platter's opinion on reconsideration.  Tr. 28 (attributing Dr. Platter's limitations to Dr. Fitterer); *see also* Tr. 196-97 (Dr. Fitterer's opinion); Tr. 214-16 (Dr. Platter's opinion).  That, however, was not the case.  Dr. Platter's opinion was more restrictive than Dr. Fitterer's opinion.  Contrary to Dr. Platter's opinion and the ALJ's RFC assessment, Dr. Fitterer opined that Plaintiff was able to stand and/or walk for approximately six hours in an eight hour workday, and also opined that Plaintiff could occasionally climb ladders, ropes, or scaffolds, and could frequently kneel, crouch, crawl, and climb stairs, and that Plaintiff had no manipulative or environmental limitations.  Tr. 197.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 10

1    therapy.  Tr. 3134-42.  On the physical side, Dr. Heather Kroll and certified disability

2    management specialist ("CDMS"), Tara Campbell (referred to as "the SIMP team"), cosigned an

3    October 2019 discharge summary following Plaintiff's completion of the program.[6]  Tr. 3134-

4    41.  The October 2019 discharge summary itself includes an opinion regarding Plaintiff's

5    functional capacity as of May 2019, prior to his participation in the SIMP program.  The report

6    states before beginning the SIMP program, Plaintiff's functional capacity was for "less than

7    sedentary" work, but that following the program, Plaintiff possessed a functional capacity for

8    light work.  Tr. 3137, 3138.

9         The SIMP team further opined as of September 24, 2019, Plaintiff could sit for four to six

10   hours per day for .75 hours at a time; stand for 1.5 to 2.5 hours per day for .50 hours at a time;

11   and walk for 1.5 to 2.5 hours per day for .50 hours at a time.  Tr. 3142.  The team opined

12   Plaintiff could lift twenty pounds occasionally, and two pounds frequently, and that he could

13   carry twenty-five pounds occasionally and five pounds frequently.  Tr. 3142.  The Team also

14   opined Plaintiff should "rarely" bend or stoop, crawl, or climb ladders.  Tr. 3142.

15        The ALJ found the opinion to be partially persuasive, reasoning the examination and

16   findings were "mostly consistent" with the longitudinal record and claimant's demonstrated

17   functioning throughout the record.  Tr. 31.  However, without citation to the record, the ALJ

18   found the Team's lift and carry restrictions were "overly restrictive in light of the record," which

19   the ALJ asserted "showed intact gait, strength, and ongoing findings within the functional

20   limits."  Tr. 31.  The ALJ made no supportability findings, as discussed in more detail below.

21

22

23   _____

[6] The report also included findings and opinions regarding Plaintiff's psychological impairments, and was also signed by psychologist, Dr. Sean Tollison.  Tr. 3138-39, 3141.  However, as noted, Plaintiff has not challenged the ALJ's decision as concerns his psychological impairments.

1    Plaintiff argues the ALJ failed to recognize the SIMP team in fact proffered two opinions

2  regarding his functional capacity:  one when he started the program in May 2019, and a second

3  opinion in October 2019, following his discharge.  Dkt. 15 at 10.  As for the May 2019 opinion,

4  Plaintiff argues the opinion, which opined he was capable of less than sedentary work, supported

5  a finding of disability at least through May 2019.  Dkt. 15 at 10.

6    As for the October 2019 opinion, Plaintiff argues the ALJ failed to discuss the

7  supportability factor, and the ALJ's consistency findings are erroneous.  Dkt. 15 at 11-12.

8  Plaintiff accurately notes the ALJ failed to provide any record citations for her consistency

9  findings.  Plaintiff, however, looks to the ALJ's earlier summary of the medical evidence in

10  conjunction with her evaluation of Plaintiff's testimony, and argues the October 2019 SIMP

11  opinion was consistent with post-opinion examinations.  In support, Plaintiff cites to (1) medical

12  expert, Dr. Schmitter's testimony regarding Plaintiff's "orthopedic pathology," neurological

13  deficits, and decreased strength, muscle atrophy, and sensation, Tr. 170-173; (2) February 2017

14  examination records from Dr. Bulley, Tr. 1614-16; and (3) November 2017 examination records

15  from Dr. Teng, Tr. 1748.  Plaintiff also argues his gait, as cited by the ALJ, was irrelevant to his

16  lifting and carrying capacity, and the ALJ did not offer any reasons for rejecting the SIMP

17  team's bending and stooping limitations.  Dkt. 15 at 13; Dkt. 22 at 3.

18    The Commissioner argues the ALJ's failure to address the SIMP team's May 2019

19  opinion Plaintiff was capable of less than sedentary work was harmless because the opinion

20  described temporary limitations that lasted only five months, noting the SIMP team subsequently

21  found in October 2019, Plaintiff had improved to light work.  Dkt. 21 at 11.

22    The Commissioner also argues the ALJ's consistency findings in fact constituted

23  supportability findings.  Dkt. 21 at 12.  As for consistency, the Commissioner contends the

1    evidence the ALJ cited in conjunction with Plaintiff's testimony supported her consistency

2    finding regarding the SIMP team's October 2019 opinion.  The Commissioner, however, fails to

3    address Plaintiff's specific arguments regarding consistency.  The Commissioner also fails to

4    respond to Plaintiff's argument regarding the SIMP team's opined postural limitations.

5         The ALJ's failure to consider the SIMP team's May 2019 opinion that Plaintiff was

6    capable of less than sedentary work cannot be considered harmless.  In arguing this opinion was

7    "temporary," the Commissioner erroneously assumes Plaintiff's functional capacity for less than

8    sedentary work, as opined to by the SIMP team in May 2019, did not commence until the date of

9    that opinion in May 2019.  That assumption, however, ignores the fact that, given Plaintiff's long

10   history of injuries and treatment, Plaintiff's less than sedentary RFC existed from his September

11   2016 onset date through the date of the SIMP team's May 2019 opinion and until Plaintiff's

12   completion of the SIMP program and the team's subsequent October 2019 opinion.  Because the

13   ALJ did not consider the May 2019 opinion, she also failed to consider this issue.  Remand is,

14   therefore, required for the ALJ to consider the SIMP team's May 2019 opinion.

15        As for the SIMP team's October 2019 opinion, the Commissioner erroneously attempts to

16   recast the ALJ's consistency findings as supportability findings.  The Ninth Circuit has held

17   "supportability" and "consistency" are two distinct factors, and the ALJ should evaluate them as

18   such.  *See Woods*, 32 F.4th at 793 & n.4 (concluding that an ALJ's statement that a medical

19   opinion was "'not supported by' the record" was not a supportability finding, but instead, in fact,

20   constituted a consistency finding, and holding that to "avoid confusion in future cases, ALJs

21   should endeavor to use these two terms of art – 'consistent' and 'supported' – with precision").

22   Regarding "supportability," the regulations provide "[t]he more relevant the objective medical

23   evidence and supporting explanations presented by a medical source are to support his or her

1   medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

2   opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1),

3   416.920c(c)(1).  By contrast, regarding "consistency," the regulations provide "[t]he more

4   consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

5   from other medical sources and nonmedical sources in the claim, the more persuasive the

6   medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§

7   404.1520c(c)(2), 416.920c(c)(2).

8        Here, in making her findings regarding the persuasiveness of the SIMP team's October

9   2019 opinion, the ALJ compared the SIMP team's opinion with the longitudinal record and the

10  findings therein regarding Plaintiff's functioning, gait, and strength – as opposed to evaluating

11  the opinion in light of the SIMP team's own supporting explanations, tests, and interviews.  *See*

12  Tr. 31.  This shows the ALJ made consistency findings and not supportability findings, as

13  defined by the controlling regulations.

14       The ALJ failed to make any supportability findings regarding either SIMP team opinion.

15  Nevertheless, the Court notes that under *Woods*, a finding the SIMP team's opinion is

16  inconsistent with the longitudinal record, if supported by substantial evidence, would be a

17  sufficient basis for the ALJ to conclude the SIMP team's opinion was unpersuasive.  *See* 32

18  F.4th at 792-94 & n.4 (consistency and supportability constitute two distinct factors that should

19  be treated separately).  Accordingly, the Court addresses below the ALJ's consistency findings

20  regarding the SIMP team's October 2019 opinion.

21       The ALJ did not provide any record citations in support of her consistency findings,

22  instead stating referring simply to her discussion of the evidence "outlined above."  Tr. 31.  In

23  accordance with *Kaufmann v. Kijakazi*, the Court has reviewed "the ALJ's full explanation"

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 14

regarding her physical impairments, including the summary of evidence and the ALJ's

supporting record citations discussed in conjunction with Plaintiff's testimony earlier in the

ALJ's decision. [7]  32 F.4th 843, 851 (9th Cir. 2022); *see also* Tr. 25-27 (citing Tr. 1343-44,

1202-04, 1725-50, 3073, 1585, 1622-29, 1196-97, 1733, 648-49, 1047-49, 1133, 1095, 739, 744,

916, 934, 805, 808, 2262, 1089, 1754, 1756, 2040, 2048, 2116, 2601-02, 2137-38, 2168-72,

3052-53).[8]

     Again, like the ALJ's findings regarding Plaintiff's testimony, the ALJ's consistency

findings regarding the SIMP team's October 2019 opinion are not supported by substantial

evidence.  First, none of the ALJ's record citations highlighted by the Commissioner pertained to

treatment for Plaintiff's back impairments – in spite of the fact that there is extensive evidence of

Plaintiff's treatment for his back impairments.  *See* Tr. 744, 916, 934. 739.  Instead, the cited

records regarding Plaintiff's gait, coordination, and range of motion were all from visits for

swollen tonsils, asthma, and respiratory issues, and were from one single month only –December

2018 – during the relevant four-year period.  Moreover, as discussed with Plaintiff's testimony,

Plaintiff's examination findings, including those pertaining to his gait, coordination, and range of

motion, fluctuated during the relevant period.  *See, e.g.,* Tr. 1436, 1733, 1614-16, 2027, 1095,

2262, 1089, 1456-58.  Furthermore, as Plaintiff notes, the ALJ failed to adequately explain how

select routine findings regarding Plaintiff's gait and coordination affected his lifting and carrying

---

[7] To the extent the Commissioner suggests *Kaufmann* permits the Court to scrutinize the ALJ's decision for post hoc arguments, the Court, declines because this interpretation is not authorized under *Kaufmann* or any other Ninth Circuit authority.  *See Makenzie M. v. Comm'r of Soc. Sec.*, No. C22-5013-BAT, 2022 WL 2817086, at *1 (W.D. Wash. July 19, 2022) (citing *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009)) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

[8] As noted above in n.2, many problems exist with the ALJ's supporting record citations.

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 15

capacity or his ability to bend, stoop, crawl, and climb ladders, as opined to by the SIMP team. Finally, the ALJ cherry-picked the records she cited, ignoring other medical evidence, including additional, more extensive examinations by orthopedic specialists. *See, e.g.,* Tr. 170-73, 1614-16, 1748-50, 2027.

For these reasons, the ALJ's consistency findings regarding the SIMP team's October 2019 opinion are not supported by substantial evidence. Remand is required for the ALJ to consider in the first instance the SIMP team's May 2019 opinion that Plaintiff was capable of less than sedentary work and to reconsider the SIMP team's October 2019 opinion.

### 2.   Medical Expert ("ME") Dr. Eric Schmitter's Opinion

Several months after Plaintiff's initial hearing, in July 2021, the ALJ held a supplemental hearing at which ME, Dr. Schmitter, testified as to whether Plaintiff's physical impairments met and/or equaled the relevant Listings and regarding his opinion as to Plaintiff's functional limitations. Tr. 162-89. Dr. Schmitter reviewed Plaintiff's medical record and noted it included "quite a bit of orthopedic pathology." Tr. 170. The doctor testified based on his review of the records regarding Plaintiff's multiple physical impairments, the most significant was Plaintiff's back impairment. Tr. 171. However, Dr. Schmitter opined Plaintiff did not satisfy the relevant listing because he did not sufficiently require an assistive device as defined by the Listings. Tr. 175.

Dr. Schmitter opined Plaintiff has the RFC to stand and walk approximately four hours out of an eight hour day with breaks as needed. Tr. 176. In terms of carrying and lifting, Dr. Schmitter stated Plaintiff would be able to lift twenty pounds occasionally and ten pounds frequently. Regarding postural limitations, Dr. Schmitter opined Plaintiff should never climb ropes, ladders, or scaffolds, but could perform other postures on an occasional basis. Tr. 176.

1  Dr. Schmitter also testified it was "obvious" that Plaintiff would need more breaks than a person

2  who did not have back impairments and that his condition may "lead to the need to take more

3  frequent breaks at unpredictable intervals." Tr. 178.  Dr. Schmitter testified this limitation would

4  apply even if Plaintiff had a sit/stand workstation.  Tr. 179.

5       Dr. Schmitter additionally testified even though Plaintiff's hip replacement surgery was

6  scheduled post-DLI in July 2021, Plaintiff's hip osteoarthritis and degeneration would have

7  existed prior to his September 30, 2020, DLI.  Tr. 180.  However, Dr. Schmitter was unable to

8  opine based on the records that he reviewed whether Plaintiff's hip impairment required

9  additional limitations prior to his DLI.  Tr. 182-83.

10      The ALJ found Dr. Schmitter's opinion was partially persuasive.  Tr. 30.  In terms of

11  supportability, the ALJ found Dr. Schmitter did not have the opportunity to review "the final

12  functional report from [Plaintiff's] rehab providers."  Tr. 30 (citing exhibit 58F generally).  As

13  for consistency, the ALJ accepted Dr. Schmitter's RFC opinion except to find that to the extent

14  Dr. Schmitter opined Plaintiff needs breaks at will, this opinion was inconsistent with the

15  longitudinal record and Plaintiff's functioning.  Tr. 30 (citing Tr. 3166-70, 2040, 2048, 1756).

16          a.     **Supportability Findings**

17      Regarding supportability, Plaintiff assumes the ALJ's reference to "exhibit 58F" the

18  "final functional report from the claimant's rehab providers" is a reference to the October 2019

19  SIMP discharge summary and report.  Plaintiff notes, contrary to the ALJ's statement otherwise,

20  Dr. Schmitter indeed reviewed the report. *See* AR 1754-61, 3134-41. The Commissioner does

21  not address this mistake. Dkt. 21 at 13-14.

22      Other than a general citation to exhibit 58F, which itself includes 104 pages, the ALJ

23  indeed failed to clarify the "final functional report" to which she referred.  Tr. 30.  The Court

notes exhibit 58F consists of 104 pages, many of which are not a "report" but instead appear to primarily constitute records from the State of Washington Department of Labor and Industries. *See* Tr. 3066-70.  The Court nevertheless agrees with Plaintiff the report to which the ALJ appears to reference is the SIMP team's October 2019 discharge summary and opinion, discussed above, and located at Tr. 3134-41 within Exhibit 58F.

Presumably, the ALJ assumed Dr. Schmitter did not review the SIMP team's October 2019 opinion/report because exhibit 58F was not admitted into evidence at the time that Dr. Schmitter testified.  *See* Tr. 3134-42; *see also* Tr. 168 (admitting exhibits 1F through 56F at Dr. Schmitter's July 1, 2021 hearing).  However, a duplicate of that report is contained in Exhibit 22F at Tr. 1754-61. The ALJ presumably overlooked the fact Exhibit 22F also contained the SIMP report at issue, and, unlike exhibit 58F, was a part of the record Dr. Schmitter reviewed. Dkt. 15 at 15 (Tr. 167-68, 363-64).  Accordingly, Dr. Schmitter would have reviewed the final report contained within exhibit 22F.  *See* Tr. 168.

The Commissioner also argues the ALJ's statement "Dr. Schmitter did not appear to have a good grasp of the new listing criteria" additionally constituted a finding his opinion lacked supportability.  Dkt. 21 at 13-14.  It is unclear the ALJ's observation constituted a supportability finding.  However, the Court notes Plaintiff has not challenged the ALJ's determination he does not meet or equal the Listings; nor does he challenge the ALJ's treatment of Dr. Schmitter's opinion that Plaintiff failed to satisfy Listing 1.15 because he did not require an assistive device.[9]

---

[9] During Dr. Schmitter's testimony, the ALJ redirected Dr. Schmitter from Listing 1.18, which pertains to a major dysfunction of a joint, to Listings 1.15 and 1.16, which concern disorders of the skeletal spine.  Tr. 171-72.  After shifting his focus from Listing 1.18 to Listing 1.15, Dr. Schmitter initially testified that he thought Plaintiff would meet the listing.  Tr. 172.  However, immediately after, while testifying regarding Plaintiff's satisfaction of each of the requisite four criteria outlined in Listing 1.15, Dr. Schmitter noted that while Plaintiff satisfied three out of four

1  *See* Tr. 175.  Instead, Plaintiff challenges the ALJ's persuasiveness findings regarding Dr.

2  Schmitter's testimony about Plaintiff's need to take breaks.  Thus, even to the extent the ALJ's

3  above observation could be construed as a supportability finding, it was not a finding that was

4  pertinent to the ALJ's evaluation of Dr. Schmitter's opinion regarding Plaintiff's need for breaks

5  at will – the opined limitation at issue on appeal.

6        For these reasons, the ALJ's relevant supportability findings are not supported by

7  substantial evidence.

8              **b.    Consistency Findings**

9        Plaintiff argues the ALJ failed to identify how and where Dr. Schmitter's opinion

10  regarding Plaintiff's need for breaks conflicted with the record and was therefore vague.  Dkt. 15

11  at 14.  Plaintiff also argues that none of the evidence cited by the ALJ in fact conflicted with Dr.

12  Schmitter's testimony regarding Plaintiff's need for breaks.  The Commissioner counters the

13  SIMP report itself, along with other "unremarkable" examination findings, supported the ALJ's

14  rejection of a need for breaks at will as opined to by Dr. Schmitter.  Dkt. 21 at 14.

15       Unlike the SIMP opinions discussed, the ALJ provided several record citations in support

16  of her finding that Dr. Schmitter's opinion was inconsistent with the record.  *See* Tr. 30. (citing

17  Tr. 3166-70, 2040, 2048, 1756).  However, none of the records cited by the ALJ – which include

18  visit records to a podiatrist for a toenail injury, a citation to the SIMP report itself, a copy of

19  Plaintiff's resume, and the 2014 work report of accident – undermine Dr. Schmitter's opinion

20  regarding Plaintiff's potential need for additional breaks due to his back impairment symptoms

21  and pain.  Nor has the ALJ adequately explained how those records – or any of the additional

22

23  of the criteria, Plaintiff did not ultimately meet the listing requirements because he did not utilize
an ancillary device – including a wheeled walker or bilateral canes – as required by the listing.
Tr. 174-75.

1    records cited in her summary of evidence at Tr. 24-27 – contradicted Dr. Schmitter's findings

2    regarding Plaintiff's need for breaks.

3         Because neither the ALJ's supportability nor her consistency findings were supported by

4    substantial evidence, remand is required for the ALJ to reconsider Dr. Schmitter's opinion.

5         **3.    Dr. Hatzakis' Opinions**

6         On November 25, 2020, treating physician, Dr. Hatzakis, provided an opinion in response

7    to a request from Plaintiff's vocational rehabilitation provider regarding Plaintiff's ability to

8    perform several jobs, including receptionist and motor vehicle dispatcher.  Tr. 525-42.  Dr.

9    Hatzakis opined Plaintiff was permanently restricted from performing any of the jobs because he

10   was unable to sit for prolonged periods of time due to his "hip and low back pathology."  Tr.

11   531, 535, 542.  Subsequently, in February 2021, Dr. Hatzakis opined that during the relevant

12   period, Plaintiff was able to lift and carry ten pounds occasionally and five pounds frequently.

13   Tr. 2693; Tr. 2698 (stating his RFC opinion was effective as of 2019).  He also opined Plaintiff

14   was able to sit and/or stand approximately three hours per day, and Plaintiff would have needed

15   to shift positions every twenty minutes while sitting and every ten minutes while standing.  Tr.

16   2693-94.  Dr. Hatzakis further opined Plaintiff would needs to walk around for approximately

17   five to ten minutes after sitting, and that he needs the opportunity to shift at will due to his "left

18   SI radicular pain and left hip impingement pain."  Tr. 2694.  Dr. Hatzakis also limited Plaintiff to

19   occasional pushing/pulling and indicated Plaintiff could only occasionally climb stairs but could

20   never twist, stoop, crouch, or climb ladders.  Tr. 2695.  The doctor opined Plaintiff's physical

21   impairments and symptoms would have caused three or more absences per month.  Tr. 2696.

22        The ALJ found Dr. Hatzakis' opinions not persuasive.  Tr. 31.  First, the ALJ suggested

23   the opinions lacked supportability because Dr. Hatzakis began treating Plaintiff three months

prior to his DLI.  Tr. 31.  Additionally, the ALJ found most of Dr. Hatzakis' opined limitations

were based "largely on [Plaintiff's] self-reports."  Tr. 31.  The ALJ further found Dr. Hatzakis'

opinion regarding Plaintiff's absences was not supported by his own treatment records, which the

ALJ asserted did "not indicate this level of disruption."  Tr. 32 (citing Tr. 2754-82, 2024-28,

2139-67).  As for consistency, the ALJ found Dr. Hatzakis' opinions were not consistent with the

record "as a whole," and specifically, were inconsistent with the SIMP team function report.  Tr.

31 (ALJ references "functional consultative examination, found at Exhibit 58").

### a.    Supportability Findings

Plaintiff argues Dr. Hatzakis's opinions are supported because he based his opinions

upon examinations, tests, MRIs, diagnostic injections, and medical evidence – and not just

Plaintiff's self-reports.  Dkt. 15 at 15-16.  Plaintiff additionally argues the timing of Dr.

Hatzakis' treatment does not undermine the supportability of his opinion.  He further notes Dr.

Hatzakis reviewed his treatment records back to 2014.

Plaintiff additionally argues the ALJ erred in her characterization of Dr. Hatzakis'

treatment notes in conjunction with the ALJ's supportability findings.  *See* Tr. 32 (ALJ's finding

that Dr. Hatzakis' treatment notes did not support the limitations to which he opined, and

citations to Dr. Hatzakis' notes in their entirety at Tr. 2754-82, 2024-28, 2139-67).  Plaintiff

contends the ALJ misrepresented the very page of Dr. Hatzakis' June 2020 notes to which she

cites, emphasizing information that was of little relevance to Dr. Hatzakis' opinion.  Dkt. 15 at

16 (discussing Tr. 2026, cited by the ALJ).  Plaintiff also notes Dr. Hatzakis indeed performed a

hip replacement surgery after completing his opinions, which itself supports Dr. Hatzakis'

finding regarding "significant pathology in Plaintiff's hip."  Dkt. 15 at 16.

The Commissioner argues Dr. Hatzakis did not cite to any abnormal physical examination findings in his opinions, and therefore, his opinions must have been based on Plaintiff's self-reports. Dkt. 21 at 15. Additionally, in an argument the Commissioner mistakenly characterizes as a "consistency factor" argument, the Commissioner also argues the ALJ's citations to Dr. Hatzakis' treatment records in fact render the opinion unsupportable. Dkt. 21 at 16 (citing Tr. 2026, 2141, 2048).[10]

Dr. Hatzakis began treating Plaintiff before his DLI for a condition that both Drs. Hatzakis and Schmitter opined was a gradual condition, that very likely was caused by Plaintiff's 2014 work accident, but was overlooked by the more urgent need to treat his back impairments and related pain and symptoms. Tr. 180, 2161. As noted by Dr. Hatzakis following his extensive review of Plaintiff's medical records, Plaintiff began complaining of groin pain soon after the 2014 accident, Tr. 2161, and such complaints are evident in the medical evidence of record, including the records cited by Plaintiff. *See, e.g.,* Tr. 604-05, 1732-40, 1090-96. Given these facts, the ALJ erred in finding Dr. Hatzakis' opinions, based on his treatment of Plaintiff in 2020-2021, and examinations, tests, and record review, was less supportable because he began treating Plaintiff at the end of the relevant period but prior to his DLI.

Second, because Dr. Hatzakis' opinion was based on his own clinical observations, testing and his extensive record review, in addition to Plaintiff's self-reports, the ALJ's related

---

[10] Again, as noted above, "supportability" and "consistency" are two distinct factors. *See Woods*, 32 F.4th at 793 & n.4. To the extent that the ALJ looked to Dr. Hatzakis' own treatment records and examination findings in evaluating the persuasiveness of Dr. Hatzakis' opinions – as opposed to other evidence and/or the longitudinal record – those findings constitute *supportability* findings. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (stating that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be").

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 22

supportability finding also was not supported by substantial evidence.[11]  *See Allison G. v. Comm'r of Soc. Sec.*, No. C20-5839-BAT, 2021 WL 3661449, at *1 (W.D. Wash. Aug. 18, 2021).

Furthermore, Dr. Hatzakis' opinion was supported by his own abnormal findings, contrary to the Commissioner's argument.  Dkt. 21 at 16 (citing duplicate records from Dr. Hatzakis' June 2020 examination at Tr. 2026, 2141).  The ALJ cited to Dr. Hatzakis' examination on June 24, 2020, in support of her supportability finding.  Tr. 32 (citing to Exh. 25F, Tr. 2024-28).  While that particular examination included normal Romberg and Trendelen test results, as noted by the ALJ, that very examination also documented Plaintiff's heel toe walking "was abnormal," and "reveal[ed] pain in low back and focal pin on facet loading."  Tr. 2024-28.  Dr. Hatzakis himself subsequently characterized the June 2020 examination as "a very abnormal low back examination," in his follow-up September 2020 examination notes.  *See* 2147-48; *see also* Tr. 2151-56 (Dr. Hatzakis' later September 2020 examination notes describe "hip pathology driving problems in left hip and right thigh").  In his February 2021 opinion, Dr. Hatzakis offered additional medical findings and observations to support his opinion.  Tr. 2695-97.

For these reasons, the ALJ's supportability findings regarding Dr. Hatzakis' opinions are not supported by substantial evidence.

**b.    Consistency Findings**

---

[11] At the time of Dr. Hatzakis' November 25, 2020, opinion regarding Plaintiff's ability to perform certain vocations, Dr. Hatzakis had seen and examined Plaintiff five times from June 2020 through November 2020.  *See* Tr. 2026-27, 2148, 2153-54, 2158-60, 2163-64. Additionally, Dr. Hatzakis saw and examined Plaintiff on February 17, 2021, the very day that he issued the February 2021 opinion.  *See* Tr. 2688-99.

1    As for consistency, Plaintiff contends the ALJ failed to adequately explain how Dr.

2    Hatzakis' opinions were inconsistent with the "record as a whole" or with the SIMP team report

3    the ALJ cited.  Dkt. 15 at 16-17.  Plaintiff asserts Dr. Hatzakis' opinions are consistent with the

4    SIMP report, noting findings in the report that he suffered from impaired sensation, reduced

5    strength and muscle atrophy in his left foot, and diminished reflexes.  *See* Tr. 3136.

6    In opposition, and as noted above, the Commissioner erroneously miscast several

7    supportability findings as consistency findings.  Aside from that mischaracterization, regarding

8    consistency, the Commissioner suggests the Court look to other "unremarkable" examinations

9    discussed by the ALJ in her evaluation of *Dr. Schmitter's* opinion.  *See* Dkt. 21 at 16 (citing Tr.

10   30).  In support, the Commissioner cites to a page in the SIMP team's October 2019 report, in

11   which the SIMP team stated Plaintiff's "gait is nearly normal," and to Dr. Yan's September 2019

12   treatment notes from Plaintiff's follow-up visit for an August 2019 toenail removal, in which Dr.

13   Yan observes  Plaintiff was, among other things, "comfortable" and in no acute distress, and

14   "neurologically grossly intact," with "no motor or sensation" defect.  Dkt. 21 at 16 (citing Tr.

15   1756, 2048).

16   The Court rejects the Commissioner's argument.  First, the Commissioner asks the Court

17   to create on its own findings that support the ALJ's largely vague consistency findings regarding

18   Dr. Hatzakis' opinions.  Specifically, the Commissioner asks the Court to impute the reasons the

19   ALJ offered for rejecting *Dr. Schmitter's opinion regarding Plaintiff's need for breaks* as

20   reasons for finding that Dr. Hatzakis' opinions regarding Plaintiff's ability to sit, stand, walk, lift,

21   carry, and additional postural limitations were inconsistent with the longitudinal record.  *See* Tr.

22   30 (citing exh. 22F3, Tr. 1756, and exh. 26F20, Tr. 2048, in rejecting Dr. Schmitter's opinion

23   regarding Plaintiff's need for breaks "at will"); *cf.* Dkt. 21 at 16.  While those were indeed

1   reasons the ALJ gave in evaluating Dr. Schmitter's opinion, they were not reasons proffered by

2   the ALJ in deeming Dr. Hatzakis' opinions inconsistent with the longitudinal record, and the

3   Court "review[s] only the reasons provided by the ALJ in the disability determination and may

4   not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630

5   (9th Cir. 2007).

6           Second, even if the Court considered the evidence cited by the Commissioner, the cited

7   records fail to support the ALJ's consistency findings regarding Dr. Hatzakis' opinions, and the

8   Commissioner has cherry-picked portions of the cited records, ignoring other less favorable

9   observations and notations.  *See* Tr. 1756 (additionally noting that Plaintiff had a "slight

10  asymmetry at the end of stance phase," that he "appear[ed] stiff and uncomfortable when he

11  would first rise from standing after sitting," that he "ha[d] weakness" on the left leg, that he was

12  only able to do heel to toe walking on the right side but not the left, and that he caught his left toe

13  on the floor while leaving the exam room but did not fall); *see also* Tr.  2044-48 (Dr. Yan notes

14  in September 2019 that Plaintiff's musculoskeletal system was "positive for back pain" and that

15  he had tenderness in his lower back and would continue with physical therapy).

16          Finally, the Court agrees the ALJ failed to adequately explain how the 2019 SIMP report

17  and opinion, which the ALJ itself discounted as "overly restrictive" in part, undermined the

18  consistency of Dr. Hatzakis' opinions given the other record evidence documenting objective

19  abnormalities with Plaintiff's back and hips**.**  *See* Tr. 170-73, 604-05, 1614-16, 1751, 2027,

20  1732-40, 1748, 1750, 646, 1096, 1861, 3135, 1096, 3135-36, 2026-27, 2139-67, 2137-38, 1130.

21  The ALJ failed in any meaningful fashion to compare and/or contrast the October 2019 SIMP

22  opinion with Dr. Hatzakis' opinion, and similarly failed to specify which of the many opined

23  limitations in the three opinions she found were inconsistent and why.

1    The ALJ's supportability and consistency findings regarding Dr. Hatzakis' opinions are,

2    therefore, not supported by substantial evidence; thus, remand is required for the ALJ to

3    reconsider Dr. Hatzakis' opinions.

4    **C.    Lay Witness Testimony**

5    Plaintiff's mother, R.B., submitted a March 2019 third party function report on Plaintiff's

6    behalf in which she described how Plaintiff's physical impairments had limited his work and

7    other activities.  Tr. 462-69.  R.B. explained that she spent time with Plaintiff approximately

8    once per week, and that while he used to be a "very active" person, his impairments require him

9    to "pick and choose what he can do now."  Tr. 466.  She stated Plaintiff is unable to sit, stand, or

10   walk "very long," and that "doctors' orders" prevent him from lifting more than ten pounds.  Tr.

11   462.  R.B. noted Plaintiff was not generally a "complainer," but that his pain was now so intense

12   that it would bring him "to tears."  Tr. 462.  She noted Plaintiff is unable to sleep because of his

13   pain and muscle cramps.  Tr. 463.  Although Plaintiff still takes care of his own personal

14   hygiene, he is much slower than he used to be.  Tr. 463.  Additionally, Plaintiff no longer

15   performs any yard work.  Tr. 465.  Plaintiff often uses a cane for stability.  Tr. 468.

16   The ALJ stated that pursuant to 20 C.F.R. § 404.1520c, she was no longer required to

17   articulate how she considered evidence from nonmedical sources like R.B.  Tr. 24.  Nevertheless,

18   the ALJ indicated she had considered R.B.'s statement to the extent that "it provided context

19   regarding some of the challenges faced by [Plaintiff] relative to coping with the chronic nature of

20   his impairments and maintaining his daily activity level."  Tr. 24.  While the ALJ did not

21   specifically evaluate R.B.'s testimony, the ALJ discounted it noting "the medical evidence. . .  as

22   summarized herein. . . does not support such a [disability] finding."  Tr. 24.

23

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 26

1    In cases filed after March 27, 2017, an ALJ is "not required to articulate" how he or she

2    evaluated evidence from non-medical sources such as educational personnel, public and private

3    social welfare agency personnel, and other lay witnesses.  20 C.F.R. § 404.1502(e).  The Ninth

4    Circuit has not clarified whether, in post-March 27, 2017, cases, an ALJ must provide "germane"

5    reasons for rejecting lay witness testimony.  *See, e.g., Muntz v. Kijakazi*, 2022 WL 17484332, at

6    *2 (9th Cir. Dec. 7, 2022) (applying "germane reasons" standard to ALJ's evaluation of third-

7    party function report from claimant's husband); *Weitman v. Kijakazi*, 2022 WL 17175060, at *4

8    n.4 (9th Cir. Nov. 23, 2022); *but see Fryer v. Kijakazi,* No. 21-36004, 2022 WL 17958630, at *3

9    (9th Cir. Dec. 27, 2022) (noting that "[i]t is an open question whether ALJs are still required to

10   consider lay witness evidence under the revised regulations, although it is clear they are no

11   longer required to articulate it in their decisions").

12       The ALJ is required to determine RFC based upon all relevant evidence of record; this

13   includes observations made by a claimant's family, neighbors, friends, or other persons. *See* 20

14   C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). That an ALJ can disregard or reject relevant lay

15   evidence for no reason is inconsistent with the Commissioner's obligation to consider such

16   evidence, and the rule the ALJ must provide some rationale in order for the Court to

17   meaningfully determine whether the ALJ's conclusions are free of legal error and supported by

18   substantial evidence. *See e.g., Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

19       Here, R.B.'s third party testimony is relevant evidence the ALJ considered and rejected

20   on the grounds the medical record does not support a disability finding.  The Court has already

21   found the ALJ erred in rejecting Plaintiff's testimony based upon this rationale, and that the ALJ

22   also misevaluated several medical opinions. The ALJ accordingly also erred in rejecting R.B.'s

23   testimony and shall reconsider R.B.'s testimony on remand.

1    **D.      Remedy**

2           Plaintiff requests and the Court agrees the appropriate remedy in this case is remand for

3    further proceedings to resolve the outstanding conflicts in the evidence. *See Brown-Hunter v.*

4    *Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (discussing the three requirements that must be

5    satisfied for remand for an award of benefits).

6                                          **CONCLUSION**

7           For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this

8    case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

9    405(g).

10          On remand, the ALJ shall reassess the medical opinions of the SIMP team's May and

11   October 2019 opinions, Dr. Schmitter's July 2021 opinion, and Dr. Hatzakis' 2020 and 2021

12   opinions; reassess Plaintiff's testimony and the lay witness testimony from his mother, R.B.;

13   develop the record and redetermine RFC as needed, and proceed to the remaining steps of the

14   disability determination process as appropriate.

15          DATED this 21st day of August, 2023.

16

17          _____

18          BRIAN A. TSUCHIDA
            United States Magistrate Judge

19

20

21

22

23

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION - 28